UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

Docket No._____

| | |
|---|---|
| GAVEN MCKENNA and JARED MCKENNA, by and through their co-Guardians Steven and Catherine McKenna, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES, | )<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs Gaven McKenna ("Gaven") and Jared McKenna ("Jared"), by and through their parents and co-guardians, Steven McKenna ("Steve") and Catherine McKenna ("Kerri") (collectively the "McKennas"), bring this civil rights action against the Maine Department of Health and Human Services (the "Department") to remedy the discriminatory treatment each of them faced because of their association with an individual with a disability.

## INTRODUCTION

This action arises under Title II the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and its implementing federal regulations, specifically, 28 C.F.R. § 35.130(g), and the Maine Human Rights Act

("MHRA"), Me. Rev. Stat., tit. 5 § 4592. Gaven and Jared are brothers and each is an individual with disabilities eligible to receive services from the Department under Maine law. Each claims that the Department discriminated against them in violation of federal and state law because of their association with each other, i.e., with another individual with disabilities.

## PARTIES

1. Plaintiffs Jared McKenna and Gaven McKenna are adult residents of Shapleigh, Maine.

2. Jared McKenna and Gaven McKenna are individuals with disabilities within the meaning of the ADA, 42 U.S.C § 12131 and the MHRA, Me. Rev. Stat., tit; 5 § 4553-A.

3. Steven and Kerri McKenna are the parents and co-guardians of Jared McKenna and Gaven McKenna.

4. Defendant is a covered public entity under both the ADA, 42 U.S.C § 12131, and the MHRA, Me. Rev. Stat., tit; 5 § 4553(8-C).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction of Plaintiffs' federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and supplemental jurisdiction of Plaintiffs' state law claims under 28 U.S.C. § 1367.

6. Venue is proper in the District of Maine under 28 U.S.C. § 1391(e)(2) because (1) Plaintiffs reside in York County, Maine and (2) a substantial part of the events or omissions giving rise to the claim occurred in Maine.

7. Plaintiffs filed timely charges of discrimination with the Maine Human Rights Commission ("MHRC"), captioned as charges PA21-0227 and PA21-0228.

8. The MHRC issued Plaintiffs notices of their right to sue pursuant to Me. Rec. State., tit. 5, §§ 4612(6), 4622(1), on July 17, 2023. Plaintiffs have exhausted all administrative remedies and have filed this action within 90 days following issuance of the right to sue notices, as required by the MHRA.

## FACTS

9. Gaven McKenna has a diagnosis of autism and moderate to severe intellectual disabilities. Gaven is nonverbal and incontinent of bowel and bladder.

10. Jared McKenna has a diagnosis of autism, moderate intellectual disabilities, and generalized anxiety disorder.

11. Gaven and Jared live in their family home in Shapleigh with their parents/co-guardians, as they always have.

12. Gaven and Jared each require assistance in all activities of daily living and require 24-hour supervision for their health and safety.

13. Due to the nature and severity of their disabilities, both Gaven and Jared qualify to receive services from the Department. Those services are funded by MaineCare under Chapter II, Section 29 of the MaineCare Benefits Manual. Gaven and Jared qualify for services under the Section 29 waiver program ("Section 29 waiver services"). Section 29 waiver services are available to MaineCare members with intellectual disabilities or autism who are eligible for an institutional level of care provided by an Intermediate Care Facility, but who choose instead to receive their services in a community-based setting.

14. On June 28, 2018, Gaven and Jared received their notices of eligibility for Section 29 waiver services from the Department.

15. Shared Living Services is one type of service available under the Section 29 waiver.

16. Both Gaven and Jared qualify for Shared Living Services at a level of service known as "single member served" ("Single Member Services" or "S5140 Services").

17. Gaven's personal planning team recommended that he receive Single Member Services.

18. Jared's personal planning team recommended that he receive Single Member Services.

19. Steve and Kerri McKenna are certified Direct Support Professionals ("DSP") who may provide Shared Living services under the Department's rules.

20. In or around May 2018, the McKennas requested that Gaven and Jared each receive Single Member Services in their home with Steve as Gaven's DSP and Kerri as Jared's DSP.

21. On August 20, 2018, the Department approved Kerri as Jared's DSP to provide Single Memb7er Services in the family home; Kerri signed a contract with an administrative oversight agency funded by the Department to provide these services.

22. The McKennas still desired for Gaven to receive his Single Member Services in the family home with Steve as his DSP, but the Department denied Gaven the ability to apply for Single Member Services until May 9, 2019.

23. On August 8, 2019, after the Department permitted Gaven to apply for Single Member Services, Gaven and Jared received a notice from the Department stating that they had been approved for a different type of services: "Shared Living, two members served" ("Two Member Services" or "S5140 UN Services") rather than the more robust Single Member Services for which each are qualified.

24. Two Member Services involve a single DSP providing services to two members simultaneously, whereas Single Member Services involve a single DSP providing services to one member only.

25. The reimbursement rate for one DSP providing Two Member Services is significantly lower than the reimbursement rate for two DSPs providing Single Member Services to each member. The rate for Single Member Services was $156.00 per diem; the rate for Two Member Services was $78.02 per diem.

26. The Department's August 2019 determination denied both Gaven and Jared one-half of the services for which they are qualified for and that are necessary for their health and safety.

27. The Department's determination was based on a discriminatory interpretation of the relevant regulation, MaineCare Benefits Manual Ch. II § 21.02-28.

28. Ch. II § 21.02-28, states:

> Shared Living (Foster Care-adult) is a model in which services are provided to a member by a person who meets all of the requirements of a [DSP] with whom that member shares a home. . . . Only one member may receive services in any one Shared Living arrangement at the same time unless a relationship existed prior to the service arrangement and the arrangement is approved by DHHS. In such case, no more than two members may be served in any one Shared Living arrangement concurrently.

6

29. In reaching its determination, the Department erroneously interpreted the undefined term "arrangement" to mean "home" rather than the service relationship between the member and the DSP.

30. The Department's erroneous interpretation has worked to prevent individuals with disabilities qualified to receive Single Member Services from receiving those services if they choose to live in a home with another individual with disabilities also entitled to receive such services.

31. The Department's erroneous and discriminatory interpretation of the applicable regulation prevented Gaven from receiving the disability services to which he is entitled so long as he lived in the same home as his brother, Jared, and vice versa.

32. The Department's determination that Gaven and Jared had to settle for Two Member Services if they wanted to live in the same home (i.e., one DSP providing services to both brothers at the same time) ignored the reality that each required and was qualified to receive one-on-one care for all hours of the day and each had an available DSP living in the home with them.

33. Steve and Kerri continued to perform all of the functions of DSPs providing Single Member Services to both Gaven and Jared, but the Department, relying on its erroneous and discriminatory interpretation, provided reimbursement to the McKennas for only one DSP providing Two Member Services.

34. In 2020, Steve and Kerri filed an action in Maine Superior Court for York County seeking review of the Department's erroneous interpretation under the Maine Administrative Procedures Act and Rule 80C of the Maine Rules of Civil Procedure, Docket Nos. AP-20-005, -006. They also filed charges of discrimination against the Department with the MHRC.

35. On July 13, 2022, the Superior Court sustained both Gaven's and Jared's Rule 80C appeals, requiring the Department to approve both to receive the Single Member Services to which they were entitled despite the brothers' decision to live in the same home. The decision criticized the Department for funding "the services for Gaven, whose needs are more acute than Jared's, at half of the single member-served rate to which he would have been entitled if [he] lived in another home." The Superior Court reasoned:

> The court concludes . . . that the rules authorize the Department to allow two one-member-served relationships in a single home.
> . . .
>
> If, as the Department itself recognized, Gaven were to move to another home with a different Shared Living Provider (or, presumably, if the parents lived separately and he lived with his father under a separate roof) his services would be funded at the full stipend rate. This is arbitrary, unreasonable, and inconsistent with the values espoused by the Department policies of maximizing community inclusion in a Shared Living family environment.

36. Since entry of the Superior Court's order, the Department has complied with the ruling and permitted both brothers to receive the

8

services to which they are entitled while living in the same home, but Plaintiffs' discrimination claims that also seek relief for the period prior to the Superior Court's Rule 80C order have yet to be resolved.

## COUNT I
### (ADA, Title II, 42 U.S.C. § 12132: Discrimination Based on Association with An Individual with a Disability)

37. Plaintiffs repeats allegations set forth in Paragraphs 1 through 36.

38. By virtue of the foregoing, Gaven was denied the opportunity to participate in or benefit from the services, programs, or activities offered by Defendant, or was otherwise discriminated against by the Defendant, by reason of his association with an individual with a disability, namely his brother with whom he desires to share a home.

39. By virtue of the foregoing, Jared was denied the opportunity to participate in or benefit from the services, programs, or activities offered by Defendant, or was otherwise discriminated against by the Defendant, by reason of his association with an individual with a disability, namely his brother with whom he desires to share a home.

40. 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Its implementing federal regulation, 28 C.F.R. § 35.130(g), provides: "A public entity shall not exclude or

otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

41. Defendant violated Title II of the ADA as described above by denying Plaintiffs services for which they were fully qualified based on their association with another individual with a disability.

## COUNT II
### (MHRA, Me. Rev. Stat. tit. 5, § 4592(6): Discrimination Based on Association with An Individual with a Disability)

42. Plaintiffs repeats allegations set forth in Paragraphs 1 through 41.

43. The MHRA provides, Me. Rev. Stat. tit. 5, § 4592(6), that it is unlawful for a "covered entity to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations or other opportunities to an individual or entity because of the known protected class status of an individual with whom the individual or entity is known to have a relationship or association[.]"

44. By virtue of the foregoing, Defendant violated the MHRA by denying Plaintiffs services for which they were fully qualified based on their association with another individual with a disability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Gaven and Jared McKenna respectfully request that the Court grant the following relief:

A. Enter judgment in favor of Plaintiffs against Defendant for violation of Plaintiffs' rights under Title II of the ADA and the MHRA;

B. Declare that the actions of Defendant constituted unlawful discrimination under Title II of the ADA and the MHRA;

C. Award Plaintiffs reimbursement of the MaineCare funding denied to them prior to implementation of the Superior Court's July 2022 order, plus compensatory damages or nominal damages in an amount that is reasonable in the premises;

D. Award Plaintiffs their costs, attorneys' fees, and non-taxable expenses in this action;

E. Permanently enjoin Defendants from denying members services on the basis of that member's association with another individual with a disability; and

F. Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: September 27, 2023

        /s/ Richard L. O'Meara
        Richard L. O'Meara
        MURRAY, PLUMB & MURRAY
        75 Pearl Street, P.O. Box 9785
        Portland, ME  04104-5085
        (207) 773-5651
        *E-mail:* romeara@mpmlaw.com